UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MURPHY BUSINESS AND FINANCIAL
CORPORATION, a Florida Corporation,**

    **Plaintiff,**

v.                                                      **Case No. 8:12-CV-0083-T-23AEP**

**FRANK SCIVALLY, LISA SCIVALLY,
and MURPHY BUSINESS AND
FINANCIAL CORPORATION -
SOUTHWEST, INC.,**

    **Defendants.**
_____ /

## REPORT AND RECOMMENDATION

Before the Court is the Plaintiff's Amended Motion for Preliminary Injunction[1] (Dkt. No. 11), which requests that the Court enter an order prohibiting the Defendants from:

> (i) marketing, promoting or selling services or otherwise using the various trade names and service marks of Murphy, including Murphy Business and Financial Corporation and Murphy Business & Commercial Properties, Inc. (and any derivations thereof) (the "Murphy Marks"), (ii) using Murphy's confidential information, compelling return of same and compelling the Defendants to transfer and/or assign all of Defendants' listing agreements to Murphy Business - Arizona, Inc., , [sic] and (iii) offering products or services the same or similar to those offered or sold by Murphy or any Murphy Regional Developer or Murphy franchise within 12 miles of Defendants' Regional Territory, or any other Murphy Regional Developer franchise or location currently in existence.

(Dkt. No. 11 at 1-2.) On March 12, 2012, the Defendants filed their Response to Plaintiff's Amended Motion for Preliminary Injunction (Dkt. No. 22), in which the Defendants claim that

---

[1] On February 13, 2012, Judge Steven D. Merryday entered an order referring the Plaintiff's motion to the undersigned for a report and recommendation. (Dkt. No. 14.)

a preliminary injunction is not warranted because they have ceased the ongoing use of the Plaintiff's trademarks and "consent to entry of an Order prohibiting [them] from using [the marks]." (Dkt. No. 22 at 1.) In addition, the Defendants claim that the balance of the Plaintiff's motion should be denied because the Plaintiff has failed to demonstrate the threat of irreparable harm. (Dkt. No. 22 at 1.) On March 16, 2012, the parties appeared before the Court for a hearing on the current motion. Significantly, at the March 16, 2012 hearing, the Plaintiff orally amended its requested relief under the current motion.[2] Rather than proceed on the requested relief in the Amended Motion for Preliminary Injunction, the Plaintiff orally altered its motion to a request seeking an order (1) requiring the Defendants to turn over to the Plaintiff approximately twenty (20) business listings initiated by the independent franchisees (the "Independent Agents") in which Defendant Murphy Business and Financial Corporation Southwest, Inc. ("Southwest") is listed as the broker of record, and (2) enjoining Southwest from prohibiting the Independent Agents from utilizing the Plaintiff or the Plaintiff's designee as a broker of record for any future transactions. The Plaintiff did not address this newly requested relief in the pleadings, and as such, the Defendants did not have an opportunity to respond to the newly raised issues. Additionally, the Plaintiff announced at the March 16, 2012 hearing, that the relief requested in the Amended Motion for Preliminary Injunction has been disposed of by consent and agreement between the parties. Specifically, the Defendants have agreed to cease any and all use of the various trade names and service marks, including "Murphy Business and Financial Information,"

---

[2] Due to the change in the Plaintiff's requested relief, the Court provided the Defendants until March 31, 2012 to file a supplemental affidavit of Lisa Scivally, which she filed on March 29, 2012.

logos, and certain trade names, service marks, and other commercial symbols (collectively as the "Murphy Marks") and have agreed to cease use of and return any and all of the Plaintiff's confidential information. Thus, the only issue before the Court is whether the Plaintiff's orally amended requested relief is appropriate and warrants the entry of a preliminary injunction.[3]

### *I. Factual and Procedural Background*

Plaintiff Murphy Business and Financial Corporation ("Murphy") is in the business of commercial real estate, business brokerage, franchise sales services, and other related services. (Dkt. No. 10 at 2.) Murphy has the exclusive right to license the use of the Murphy Marks, which it provides to its franchisees. (Dkt. No. 10 at 2.) Murphy works with two types of franchisees: 1) the Independent Agents who use its system, and 2) the Regional Developer, who uses the system and is responsible for soliciting other agents, training them, and servicing them as a broker for all sales of businesses in which the franchisee participate. (Dkt. No. 10 at 3.) In the Regional Developer model, a Regional Developer will enter into a regional development agreement ("RDA") that governs its relationship with Murphy. (Dkt. No. 10 at 3.) In its role as a broker, the Regional Developer will participate in any listing relating to the sale of a business for itself and the franchisees in its territory; it enters into a listing agreement with the purchaser or seller of the business, maintains all documentation concerning the transaction, manages the agent and

---

[3] Notably, the Plaintiff's orally amended request does not comply with Local Rules 4.06 and 4.05(b)(1) - (b)(5), which require, amongst other things, that the Plaintiff's pleadings describe precisely the conduct sought to be enjoined and specifically detail facts in a verified complaint or accompanying affidavits on which the Court can make a reasoned determination. The Plaintiff's failure to comply with the Local Rules is reason alone to deny the requested relief. However, the Court has considered the matter based upon the current record, and as described below, the Plaintiff has simply failed to provide sufficient support to demonstrate irreparable harm warranting the orally requested relief.

process, oversees the closing, and distributes commissions to the franchisee, itself, and to Murphy. (Dkt. No. 10 at 3.)

At some point in late 2006 or early 2007,[4] Defendants Frank Scivally and Lisa Scivally (the "Scivallys") entered into an RDA with Murphy for the exclusive territory of Arizona, New Mexico, and parts of Texas. (Dkt. No. 10 at 4; Dkt. No. 22 at 2.) At the time the Scivallys entered into an RDA with Murphy, neither of them had a real estate broker's license and instead used Real Estate Marketing Professionals of Tuscon, LLC as their broker. (Dkt. No. 33 at 4.) After Lisa Scivally obtained her own broker's license in June of 2007, she opened her own real estate brokerage and operated under the name Lisa A. Scivally, Sole Broker from June 2007 to September 2007. (Dkt. No. 33 at 5.) In September 2007, the Scivallys formed Southwest to operate as a licensed corporate broker for the Scivallys. (Dkt. No. 33 at 5.) Southwest thereafter entered into independent contractor agreements with various Independent Agents as their broker of record. (Dkt. No. 33 at 5.) In a separate and distinct arrangement with Murphy, the Independent Agents also paid monthly service fees for services provided by Murphy including the use of the Murphy Marks, posting all business listings within the Murphy System, and providing marketing and advertising support. (Dkt. No. 33 at 9.)

Murphy claims that, at the time it entered into the RDA with the Defendants, the Scivallys also entered into an Addendum to the RDA and Guarantee Agreement, whereby the

---

[4] The date of when the initial RDA was entered into between Murphy and Defendants Frank Scivally and Lisa Scivally is contested. Murphy puts forth a signed contract with a date of December 1, 2006. (Dkt. No. 10 Ex. A.) However, the Defendants contend that Defendants Frank Scivally and Lisa Scivally did not sign the RDA until April 2007, and that Murphy "fraudulently <u>backdated</u> the agreement to December 1, 2006." (Dkt. No. 22 at 2.)

4

Scivallys personally guaranteed the obligations under the RDA, and agreed to reimburse Murphy for attorneys' fees and costs incurred in enforcing the Guarantee Agreement. (Dkt. No. 10 at 4.) The Defendants deny these claims, contending that both agreements were fraudulently backdated. (Dkt. No. 22 at 3.) Murphy also asserts that on or around December 1, 2006, the parties entered into an agreement whereby Southwest assumed each and every obligation of the RDA "either independently or as a transfer agreement of the existing RDA with [the Scivallys] remaining as an obligator [sic] and remaining as a Gurantor pursuant to the Guaranty Agreement." (Dkt. No. 10 at 4.) According to Murphy, pursuant to the RDA, the Defendants agreed to operate as a Murphy Regional Developer for ten years, during which time they were permitted to use the Murphy Marks in association with the sale of franchises located in its regional territory as part of Murphy's franchise system. (Dkt. No. 10 at 5.) Pursuant to the RDA, the Defendants were required to make certain commission payments to Murphy ("Franchise Fees") and Murphy had the right to terminate the RDA for the Defendants' failure to pay these fees. (Dkt. No. 10 at 5.) Also pursuant to the RDA, upon termination, the Defendants were required to "immediately cease using all of the Murphy Marks, returning all confidential information, ... customer lists, forms, and materials, and agreeing not to compete." (Dkt. No. 10 at 6.) On December 1, 2011, Murphy terminated the RDA based on several alleged breaches, including the failure to pay outstanding Franchise Fees, failure to submit various reports, failure to distribute payments, and failure to indemnify Murphy. (Dkt. No. 10 at 6.) According to Murphy, since the termination of the RDA, the Defendants have continued to use the Murphy Marks without authorization and continued to use Murphy's confidential information. (Dkt. No. 10 at 8.)

The Defendants claim that Murphy engaged in "multiple and flagrant violations of the FTC's Franchise Rule by failing to properly and timely make disclosures by providing Defendants with a Uniform Franchise Offering Circular, or UFOC, and engaged in multiple materially false representations, including false earnings representations." (Dkt. No. 22 at 3.) The Defendants also claim that Murphy does not possess any license in Arizona, as a broker, or otherwise, and is therefore prohibited by Arizona law from sharing in any broker's commission, including Southwest's commissions. According to the Defendants, because Murphy is not licensed as a broker in Arizona, its termination of the RDA for failure to pay Franchise Fees was wrongful, and it is illegal for Defendants to pay these fees to Murphy. (Dkt. No. 22 at 3.) Murphy demands the transfer of current listing agreements, but according to the Defendants, those listing agreements are under Southwest's control as broker of record, as opposed to the Scivallys, and Southwest has never signed a franchise agreement with Murphy. (Dkt. No. 22 at 4.) Thus, according to the Defendants, Southwest is not obligated to turn over any of its listings, nor is it required to refrain from operating as broker of record for the Independent Agents in the future. (Dkt. No. 22 at 4.) Further, the Defendants claim that, under Arizona law, they are not legally permitted to turn over these listings because Murphy is not licensed broker in Arizona . (Dkt. No. 22 at 4.)

On January 13, 2012, Murphy filed its Complaint against the Defendants and on February 6, 2012 filed its Amended Complaint. In its Amended Complaint, Murphy alleges several claims against the Defendants, including violations of the Lanham Act and breach of contract, for which it seeks specific performance in the return of all "customer lists, forms and materials" as well as an order temporarily and permanently restraining and enjoining the Defendants from "competing in any way with any Murphy Regional Developer or franchisee,

from making any use of the documentation related to deals and transactions or any use of the confidential information and otherwise requiring the Defendants to abide by all post termination obligations," and an order compelling the Defendants to transfer all listing agreements signed by Southwest to Murphy. (Dkt. No. 10 at 10-1.) On February 7, 2012, Murphy filed its Amended Motion for Preliminary Injunction (Dkt. No. 11).

## *II. Standard of Review*

The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether a preliminary injunction should issue, the district court must consider whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) that the moving party will suffer irreparable harm unless the injunction issues; (3) the threatened harm to the movant outweighs the potential damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Further, courts in the Eleventh Circuit will not issue a preliminary injunction where the moving party fails to meet its burden of proof on each of the four factors. *See Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir.1989); *see also Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 908 F.2d 706, 708 n. 2 (11th Cir.1990) (noting that the preliminary injunction was denied because the movant

7

failed to show a threat of irreparable harm, even though it established a substantial likelihood of success on the merits).

### III. Discussion

In its Response to Plaintiff's Amended Motion for Preliminary Injunction, the Defendants argue that Murphy's Amended Motion for Preliminary Injunction should be denied because it has "failed to show a likelihood of success on the merits, or even attempted to show any irreparable harm, other than with respect to alleged future use of its trademarks." (Dkt. No. 22 at 1.)

#### A. Likelihood of Success on the Merits

A likelihood of success on the merits is generally the most important factor when considering whether to grant a motion for preliminary injunction. *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. April 19, 2000)). In order to satisfy this element, the movant requires a showing of "only *likely*, rather than *certain*, success." *Home Oil Company, Inc. v. Sam's East, Inc.*, 199 F.Supp.2d 1236, 1249 (M.D.Ala. 2002) (emphasis in original). Further, in cases where the "'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986)).

In this case, Murphy argues that it has a substantial likelihood of success on its breach of contract claim against the Defendants. The Defendants assert, however, that Southwest has no contractual relationship with Murphy, and thus, Murphy cannot prevail on its claims against

Southwest. Murphy also contends that it is entitled to be the exclusive broker of record for the Independent Agents due to existing franchise agreements with those agents. Murphy, however, has not put forth any of these alleged agreements into the record and the Court is unable to speculate as to their existence. Further, the Defendants claim that they are not liable to Murphy for unpaid Franchise Fees because Murphy was not a licensed broker in Arizona prior to the RDA's termination, and paying such fees would have constituted a violation of Arizona law. Since the record is not fully developed, and since both the formation and termination date of the relevant RDA are in dispute, it is not entirely clear to what degree Murphy is likely to succeed on the merits of its claims. However, even assuming there exists a substantial likelihood of success on the merits, Murphy has clearly failed to demonstrate that it would suffer irreparable harm, but for the Court's entry of a preliminary injunction in this case.

### *B. Irreparable Harm*

The Eleventh Circuit has stressed that the threat of irreparable harm is an absolute prerequisite to the issuance of injunctive relief. *See Northeastern Florida Chapter v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990) (noting that a showing of irreparable harm is "the sine qua non of injunctive relief."). The Supreme Court has held that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). "To demonstrate irreparable harm, a plaintiff must show that it has no adequate remedy at law, meaning that its injury cannot be undone through monetary remedies." *Morris Commun. Corp. v. PGA Tour, Inc.*, 117 F.Supp.2d 1322, 1330 (M.D. Fla. 2000) (internal quotation marks omitted).

Murphy argued at the March 16, 2012 hearing that it is contractually unable to provide services to the Independent Agents due to their independent contract with Southwest, and as a result, risks "losing business" in Arizona. The Defendants have stated on the record that nothing in its contracts with the Independent Agents precludes Murphy from continuing to support them in exchange for monthly service fees. Murphy contends that there is indeed a contractual basis for this claim, but has not submitted any evidence on the record to support its alleged prohibition from providing business services to the Independent Agents. Murphy also requests that the Defendants turn over the approximately twenty (20) business listings initiated by the Independent Agents in which Southwest is listed as the broker of record and that the Court enter an order enjoining Southwest from prohibiting the Independent Agents from utilizing Murphy or Murphy's designee as a broker of record for any future transactions. Murphy argued at the March 16, 2012 hearing that, if the requested relief is not granted, it would likely go out of business in the state of Arizona. On its face, it appears that the essence of Murphy's alleged harm consists of lost Franchise Fees, to specifically include lost broker commission fees, which does not constitute irreparable harm. Further, since these matters were not addressed in the pleadings, Murphy has failed to put forth evidence to demonstrate how it would lose its business in the state of Arizona and how that lost business would constitute irreparable harm. Lastly, there is no evidence to support that Murphy would be prohibited from acting as the broker of record for business listings with other agents throughout the state. In sum, Murphy has not put forth any evidence on the record to show that, but for the Court's entry of a preliminary injunction, it would

suffer irreparable harm. Without evidence on the record of irreparable harm, the Court finds that the Plaintiff's Amended Motion for Preliminary Injunction should be denied.[5]

### *IV. Conclusion*

Upon due consideration, and for the foregoing reasons, it is **RECOMMENDED** that Murphy's Amended Motion for Preliminary Injunction (Dkt. No. 11), as orally amended during the March 16, 2012 hearing, be **GRANTED AND PART AND DENIED IN PART**. Pursuant to the Defendants' agreement, the Court recommends that the Defendants be enjoined from: (1) marketing, promoting or selling services, or otherwise using the Murphy Marks, and (2) using Murphy's confidential information, compelling return of the same within five (5) days of the Court's Order. The Court recommends that the remainder of Murphy's Amended Motion for Preliminary Injunction (Dkt. No. 11), as orally amended during the March 16, 2012 hearing, be **DENIED.**

**IT IS SO REPORTED** at Tampa, Florida on this 3rd day of May, 2012.

ANTHONY E. PORCELLI
United States Magistrate Judge

---

[5] Since the issuance of a preliminary injunction requires that the movant demonstrate the threat of irreparable harm, and Murphy has not satisfied its burden in this regard, the Court need not address the third and fourth factors of its preliminary injunction analysis at this time. *See Northeastern Florida Chapter v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990). Further, the Court's findings relate only to the outstanding issue of whether Murphy's orally amended requested relief is appropriate and warrants the entry of a preliminary injunction, and does not include the requested relief consented to by the Defendants in their Response to Plaintiff's Amended Motion for Preliminary Injunction (Dkt. No. 22).

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday

Counsel of Record

12